UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

Michael Dunville and
Michelle Dunville,

    Debtors.

Case No. 09-64837
Chapter 7
Hon. Walter Shapero

_____/

Wendy Turner Lewis, Chapter 7 Trustee,

    Plaintiff,

v.

Adv. Pro. No. 11-06675

Land Holding, LLC, successor to Capstone
Realty, Inc, d/b/a Capstone Red, Inc.,
Marie Sexton, and PNC Bank,

    Defendants.

_____/

**OPINION DENYING MOTION TO DISMISS COMPLAINT,
OR IN THE ALTERNATIVE, MOTION FOR SUMMARY
JUDGMENT FILED BY LAND HOLDING, LLC AND PNC BANK**

**I. PROCEDURAL BACKGROUND AND FACTS**

Michael and Michelle Dunville ("Debtors") filed their Chapter 7 bankruptcy petition on August 10, 2009. Prior to their bankruptcy filing, the Debtors had an eight year loan relationship with Land Holding, LLC ("Land Holding"), successor by merger to Capstone Realty, Inc. d/b/a Capstone Read, Inc. ("Capstone"), assignee of National City Bank ("National City").

On November 6, 2002, the Debtors purchased a commercial property located at 2261 Union Lake Road, Commerce, Michigan (the "Property") from Marie Sexton. To finance that purchase, the Debtors took out a one-year mortgage loan from National City Bank. On

1

November 6, 2012, the Debtors and June R. Dunville, Michael Dunville's mother, executed a promissory note in favor of National City in the original principal amount of $1,350,000.00. The indebtedness was secured by a Future Advance Real Estate Mortgage on the Property, dated November 6, 2002, which was recorded in the Oakland County Register of Deeds on January 27, 2003 ("Commercial Mortgage"). As additional security for repayment of the promissory note, the Debtors executed a Future Advance Real Estate Mortgage, dated November 6, 2002, on residential property located at 5106 Deer Run Circle, Orchard Lake, Michigan. That mortgage was recorded in the Oakland County Register of Deeds on January 27, 2003. The promissory note was set to mature on November 6, 2003.

The Debtors were unable to sell the Property within that year and, instead of foreclosing on the Commercial Mortgage, National City entered into a replacement note with the Debtors, dated December 11, 2003, in the amount of $1,350,000.00 ("First Replacement Note"). The First Replacement Note was also signed by June Dunville, individually and in her capacity as Co-Trustee of the R. Martin Dunville Revocable Living Trust, and it became due on June 11, 2004.

Thereafter, the Debtors were not able to sell the Property and, as a result, the Debtors and June Dunville, individually and in her capacity as Co-Trustee of the R. Martin Dunville Revocable Living Trust, executed consecutive replacement notes, dated December 11, 2003; October 26, 2004; July 7, 2005; February 21, 2006; and August 21, 2006, extending the maturity dates of their loan, the last such date being February 21, 2007.

When the last maturity date passed and the Debtors were still unable to sell the Property, National City Bank decided against any further similar extensions. Instead, the Debtors, June Dunville, individually and in her capacity as Co-Trustee of the R. Martin Dunville Irrevocable

Trust, and National City Bank entered into what they termed a modification agreement dated April 16, 2007, extending the maturity date of the loan to October 21, 2007. Once again, the Debtors were unable to sell the Property prior to that maturity date. On January 24, 2008, the Debtors, June Dunville, individually and in her capacity as Co-Trustee of the R. Martin Dunville Irrevocable Trust, and National City entered into a second modification agreement, further extending the maturity date of the loan to April 21, 2009.

In the summer of 2008, the Debtors were in negotiations to sell the Property to Physicians Renaissance Real Estate, LLC and, on June 26 2008, those parties entered into a Memorandum of Option, under which Physicians Renaissance Real Estate, LLC obtained an option to purchase the Property. That Memorandum of Option was recorded in the Oakland County Register of Deeds on June 27, 2008, but that sale was never consummated. However, in anticipation of that sale closing, National City Bank prepared and executed a Satisfaction of Mortgage dated April 29, 2008. That document was never recorded. A letter indicating that a loan was paid in full was also concurrently generated by National City Bank, and, on May 20, 2009, both that letter and the original of the most recent replacement note were sent to the Debtors. But, on May 28, 2009, counsel for National City Bank sent to Debtor's counsel and to June Dunville a correction letter explaining that the loan payoff letter and the original copy of the Operative Note had been sent by mistake, stating that the loan had not in fact been paid in full, and requesting the return of the original copy of the Operative Note. The Debtors failed to return that original Operative Note to National City. It is undisputed that the loan was never actually paid in full by the Debtors.

On June 23, 2009, the Operative Note, the Mortgage, and other loan documents, pursuant to a Non-Recourse Assignment, were assigned by National City Bank to Capstone. Capstone later merged into Land Holding.

3

As noted, on August 10, 2009, the Debtors filed their Chapter 7 bankruptcy petition. In their Schedule A, the Debtors listed the Property and indicated that it had a current value of $760,000.00 and that it was encumbered by a secured claim in the amount of $1,500,000.00. In their Schedule D, the Debtors listed a debt in the amount of $1,5000,000.00 owing to National City Bank under the Operative Note.

On December 16, 2009, Capstone filed a Motion to Lift the Automatic Stay on the Property. Debtors and the Trustee did not object to that Motion and, on February 5, 2010, the Court entered an Order lifting the stay. On August 31, 2010, the Property was sold at a foreclosure by advertisement sale and the resulting Sheriff's Deed was recorded in the Oakland County Register of Deeds on September 7, 2010, with a redemption period expiring on March 3, 2011.

On October 15, 2010, the Debtors filed a Complaint in the Wayne County Circuit Court against Capstone and Iris Marie Sexton for Injunction and Request for Temporary Restraining Order and Preliminary Injunction; Request for Declaratory Relief and to Set Aside Foreclosure; Request to Quiet Title and Hold Null and Void Iris Marie Sexton's Mortgage.[1] On November 9, 2010, Land Holdings removed that case to this Court (Adv. Pro. No. 10-7250). The defendants in that removed adversary proceeding asserted the defense, among others, that the Debtors were attempting to pursue claims that were property of the estate which could only be asserted by the Trustee. On March 3, 2011, the foreclosure redemption period expired.

On October 13, 2011, the Trustee filed a new and the present Complaint against Land Holding, Capstone, Marie Sexton, and PNC Bank. Shortly thereafter, on October 20, 2011, the removed adversary proceeding (Adv. Pro. No. 10-7250) was dismissed without prejudice by

---

[1] Apparently there was some claim by Iris Marie Sexton (from whom the Debtors had originally acquired the Property) that she held a mortgage on the Property.

4

11-06675-wsd    Doc 42    Filed 12/07/12    Entered 12/07/12 15:57:18    Page 4 of 13

stipulation between the Debtors and the Defendants. In that new Complaint, the Trustee asserts seven claims against Land Holding and PNC Bank (hereinafter collectively referred to as "Defendants"): (1) Declaratory Judgment, (2) Avoidance under 11 U.S.C. §§ 544 and 550, (3) Quiet Title, (4) Accounting, (5) Fraudulent Transfer under 11 U.S.C. § 548, (6) Fraudulent Transfer under 11 U.S.C. § 544, and (7) Turnover of Property. The Defendants filed a Motion to Dismiss the Adversary Proceeding under Fed. R. Civ. P. 12(b)(6), or, in the Alternative, Motion for Summary Judgment. The Court held a hearing on the matter and took it under advisement.

## II. DISCUSSION

### A. Statute of Limitations under 11 U.S.C. § 546(a)

The Defendants' first argument is that Counts III (Avoidance and Recovery under 11 U.S.C. §§ 544 and 550), IV (Quiet Title), and V (Accounting) of the Complaint are purely derivative of avoidance actions and that they should be dismissed because they time barred under 11 U.S.C. § 546(a). The Trustee argues that (1) the statute of limitations set forth in § 546(a) applies only to avoidance claims under §§ 544, 548, and 553, and, even if the Court were to dismiss the avoidance claims in the Complaint, the balance of the Complaint can stand on its own as an action under Michigan law; (2) the avoidance claims were timely filed by the Debtors in the previous state court case, which was removed to this court, and, as part of the voluntary dismissal of the removed case, the parties understood that the Trustee would be taking up the claims originally raised by the Debtors; (3) the doctrine of equitable tolling renders the avoidance claims asserted in the Complaint timely filed; and (4) the avoidance claims were timely filed under applicable Michigan statutes.

11 U.S.C. § 546 provides, in pertinent part:

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

5

> (1) the later of--
>> (A) 2 years after the entry of the order for relief; or
>> (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
>
> (2) the time the case is closed or dismissed.

The Debtors filed their Chapter 7 bankruptcy petition and an order for relief was entered on August 10, 2009. The two year time period under § 546(a) thus expired on August 10, 2011. The Trustee filed the Complaint in this adversary proceeding on October 13, 2011. It is clear that the Trustee did not file the § 544 and § 550 counts of this Complaint within that two year period, but that does not necessarily dispose of the issue. Here, the Debtors had initiated an action within the two year period in the state court based on the same underlying facts, seeking the essentially the same remedies against the same defendants. As noted, that state court action was later removed to, and continued as such in, this Court. The timeline and record indicate that the cause of action belonged to the Trustee; the voluntary dismissal of the Debtors' complaint was in substance agreed to; and incident to the said voluntary dismissal, the Trustee would be filing the present and same Complaint in this Court. Those circumstances require the Court to consider the Trustee's Complaint, in substance and in essence, as a continuation of the previously filed state court case with the Trustee being merely substituted for the Debtors as the Plaintiff. In concluding so, the Court notes that (1) the Defendants defended the previous adversary complaint on the basis that the Debtors were not the correct party to prosecute the claims raised in their complaint, and (2) Defendants were aware, prior to the dismissal of the removed adversary proceeding, that the Trustee would be essentially stepping into the Debtors' shoes and would be filing a new, but essentially the same, adversary proceeding. In practical and legal effect, it is as if the Trustee were substituted as the Plaintiff in the prior removed case.

Thus, the Court concludes that the current adversary proceeding should be substantively considered to essentially be a continuation of the prior adversary proceeding, and therefore, the date of the commencement of which should be considered either the date on which the state court case was commenced or the date of its removal to this Court – both of which dates being within the two year limitations period set forth in § 546(a).[2]

For those reasons, the Court concludes that the Trustee's Complaint is not time barred.

### B.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides the statutory basis for summary judgment, and is made applicable to adversary proceedings via Federal Rule of Bankruptcy Procedure 7056. Summary judgment is only appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48. A "genuine" issue is present "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The basis of the Trustee's Complaint is that letter National City Bank sent to the Debtors, along with the original copy of the Operative Note stamped paid, had the legal effect of discharging the mortgage and cancelling the obligation of the Debtors to pay, and therefore, the Defendant did not have any interest in the Property when it foreclosed and the foreclosure is

---

[2] Moreover, and also relevant to the Rule 12(b)(6) discussion, the Court would note, at least at this point, that it appears there was really no "transfer" by the Debtors in this case that might bring § 544 and § 550, and by virtue thereof § 546(a), into play in this matter.  The only transfers evident here are the original mortgage by the Debtors and the due date extensions thereof (which are not being attacked), the Replacement Notes entered into by the Debtors (which are not being attacked), the assignment by National City Bank of its interest in the mortgage and note to the Defendant (which is not an assignment by the Debtors), and the mailing of the original copy of the Operative Note to the Debtors (which is not a transfer by the Debtors).

7

void. The defense is that the original copy of the Operative Note was mistakenly stamped paid by an individual at National City Bank and that National City Bank mistakenly sent the letter and the original copy of the Operative Note to the Debtors.

Although it is not directly cited in the Trustee's Complaint, the Trustee is relying on Mich. Comp. Laws § 440.3604 to support her claims. Mich. Comp. Laws § 440.3604(1), which provides for the voluntary discharge of a counter-party's obligations, states:

> A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument (*i*) by an intentional voluntary act, such as surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation or striking out of the party's signature, or the addition of words to the instrument indicating discharge, or (*ii*) by agreeing not to sue or otherwise renouncing rights against the party by a signed writing.

Mich. Comp. Laws § 440.3604(1) requires that "a party's decision to discharge an obligation must be both intentional and voluntary." *Fed. Deposit Ins. Corp. v. Fedorov*, 10-11061, 2010 WL 2944569 (E.D. Mich. July 22, 2010) *reconsideration denied,* 10-11061, 2010 WL 3419454 (E.D. Mich. Aug. 27, 2010). Although the Court is not aware of any Michigan cases dealing specifically with this issue, courts considering similar statutes in other states have concluded that if the holder of the instrument mistakenly marks a note "paid" (or the equivalent thereof), and that mistake is proven, there has not been an intentional discharge and the obligation to pay is not discharged. *See G.E. Capital Mortg. Services, Inc. v. Neely*, 135 N.C. App. 187, 191, 519 S.E.2d 553, 556 (1999); *Gibraltar Sav. Ass'n v. Watson*, 624 S.W.2d 650 (Tex. App. 1981); *Columbia Sav. v. Zelinger,* 794 P.2d 231 (Colo. 1990); *Gover v. Home & City Sav. Bank,* 574 So.2d 306 (Fla. Dist. Ct. App. 1991); *First Galesburg Nat'l Bank & Trust Co. v. Martin,* 58 Ill.App.3d 113, 15 Ill. Dec. 603, 373 N.E.2d 1075 (1978); *Richardson v. First Nat'l Bank,* 660 S.W.2d 678 (Ky.Ct.App.1983); *FirsTier Bank v. Triplett,* 242 Neb. 614, 497 N.W.2d 339 (1993); *Los Alamos*

*Credit Union v. Bowling,* 108 N.M. 113, 767 P.2d 352 (1989); *Peoples Bank v. Robinson,* 272 S.C. 155, 249 S.E.2d 784 (1978).

Thus if, as an evidentiary matter, the Defendants are able to prove that the Operative Note was marked paid and sent to the Debtors mistakenly, the obligation will not be considered to have been discharged. What is currently before the Court, however, is a motion for summary judgment and it is clear that the facts and circumstances surrounding the "alleged" mistake need to be fleshed out in such an evidentiary hearing. Therefore, the Defendants' Motion for Summary Judgment is denied.[3]

### C. Fed. R. Civ. P. 12(b)(6)

The Defendants' next argument is that the Trustee has failed to state a claim upon which relief can be granted with regard to Counts II (Declaratory Judgment), IV (Quiet Title), and V (Accounting).

Federal Rule of Civil Procedure 12(b)(6), made applicable to adversary proceedings in bankruptcy through Fed. R. Bankr. P. 7012(b) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. The court is required to construe the complaint in the light most favorable to the plaintiff, and accept all well-pleaded factual allegations in the complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Lewis v. ACB Business Services*, 135 F.3d 389, 405 (6th Cir. 1998). A court will not accept conclusions

---

[3] While also not directly raised by the pleadings or argued in the briefs, it should be parenthetically noted, as this Court has ruled in a number of cases, that, as a matter of state law (i.e. one must timely attach a mortgage foreclosure either before the sale or shortly after it) and the principals of estoppel, the Debtors and the Trustee would be precluded from now taking their current positions given the facts in this case, namely that (1) neither the Debtors or the Trustee objected to the lifting of the automatic stay, following which the mortgage was foreclosed and the equity of redemption expired, (2) although the Debtors initiated the state court proceeding challenging the right of National City Bank to foreclose during the redemption period, they failed to seek a stay of the redemption period, and (3) the Debtors treated the mortgage obligation as an existing debt in their Schedules, with no mention of the defenses thereto now being raised.

9

11-06675-wsd    Doc 42    Filed 12/07/12    Entered 12/07/12 15:57:18    Page 9 of 13

of law or unwarranted inferences which are presented as factual allegations. *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1974). A complaint must contain either direct or reasonable inferential allegations that support all material elements necessary to sustain a recovery under some viable legal theory. *Lewis v. ACB*, 135 F.3d at 405 (internal citations omitted). A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1965 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 563. *See also Association of Cleveland Fire Fighters v. Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

In *Twombly*, the United States Supreme Court revisited the standards that govern Civil Rule 12(b)(6) dismissal motions. In doing so, the Supreme Court in *Twombly* reaffirmed the "notice pleading" standard of Rule 8(a)(2) but renounced "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 560-61 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). As explained by the Court in *Twombly*,

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]". . . While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]

*Twombly*, 550 U.S. at 553-55 (citations omitted). The *Twombly* court went on to

> hold that stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest [grounds for relief]. Asking for plausible grounds to infer [a right to relief] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [of an entitlement to relief]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely."

*Twombly*, 550 U.S. at 553-55 (citations omitted). *See also Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197 (2007) (explaining that Fed. R. Civ. P. 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary[.]")).

The Supreme Court later examined *Twombly* in the case of *Ashcroft v. Iqbal*, 556 U.S.662, 129 S. Ct. 1937 (2009). In *Iqbal*, the Supreme Court held that *Twombly* applies to all civil actions and is not limited to antitrust disputes only as was the case in *Twombly*. *Iqbal*, 556 U.S. at 684. The *Iqbal* Court further defined two "working principles underl[ying its] decision in *Twombly*:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not "show[n]" – "that the pleader is entitled to relief."

*Iqbal*, 556 U.S. at 663-64 (citations omitted).

Counts II and IV of the Trustee's Complaint are clearly an attempt at pleading the Trustee's argument that the letter National City Bank sent to the Debtors, along with the original copy of the Operative Note stamped paid, had the legal effect of discharging the mortgage and cancelling the obligation of the Debtors to pay, and therefore, the Defendant did not have any interest in the Property when it foreclosed and the foreclosure is void. Although the Trustee does not specifically cite Mich. Comp. Laws § 440.3640, it was alleged that the foreclosure is invalid because the Defendants did not have any interest in the Property when the foreclosure sale occurred. The Court concludes that the Trustee has therefore sufficiently pled a claim for relief.

With regard to Count IV, the Defendants argue that there is no recognized cause of action in Michigan for "quiet title" and that the Trustee has failed to cite any statutory or common law basis for that claim. Under Michigan law, "quiet title" is not a separate cause of action, but rather is a remedy. *Shaya v. Countrywide Home Loans, Inc.*, 11-1484, 2012 WL 1816233 (6th Cir. May 21, 2012), as amended (May 24, 2012). Despite the fact that Quiet Title is not a separate cause of action, the Trustee is clearly seeking to have the foreclosure sale deemed void and is seeking the relief of having the Court quiet title in the name of the estate.

The Court concludes that the Trustee has stated a claim upon which relief can be granted and, therefore, the Defendants' Motion to Dismiss is denied.

### III. CONCLUSION

For the reasons set forth herein, the Defendants' Motion to Dismiss Complaint, or, In the Alternative, Motion for Summary Judgment is denied.

**Signed on December 07, 2012**

                 **/s/ Walter Shapero**
               **Walter Shapero**
               **United States Bankruptcy Judge**